**Calbert F. FARRIS, Plaintiff,**

v.

**Dennis MOECKEL, Heavy Howlett, John Does 1–10, Benny Padilla, individually and as the Sheriff of McKinley County, New Mexico, the Board of Commissioners of McKinley County, New Mexico, W. Thomas Bowers, John Does 11–15, Clayton Police Department, the Town Council of Clayton, Delaware, Defendants.**

**Civ. A. No. 85–621–JJF.**

United States District Court,
D. Delaware.

July 2, 1987.

---

Sheldon N. Sandler, and Barry M. Willoughby, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Roger A. Akin, of Sawyer & Akin, Wilmington, Del., for defendants Bowers, John Does 11–15, and Clayton Police.

James F. Bailey, of James F. Bailey & Associates, Wilmington, Del., for defendants Moeckel, Howlett, John Does 1–10, Padilla, and Board of Com'rs of McKinley County.

William L. Witham, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Dover, Del., for defendant Town Council of Clayton.

## OPINION

FARNAN, District Judge.

Plaintiff, Calbert F. Farris, brought this action against nine named defendants and twenty unnamed "John Does", alleging deprivations of his constitutional and statutory rights under 42 U.S.C. § 1983. Plaintiff also alleges pendent state law claims for common law conversion and negligence. Currently before the Court are Motions to Dismiss filed by all defendants.[1]

## I. FACTS.

According to the Complaint, plaintiff was traveling through the western and southwestern United States in his 1974 Dodge van for several months prior to October 1983. On this journey, plaintiff carried numerous items of photographic equipment, his clothing and other personal belongings and, among other things, a large quantity of Indian jewelry, which he collected and traded.

On or about October 25, 1983, defendant Dennis Moeckel, an Investigator employed by the McKinley County New Mexico Sheriff's Department, filed a criminal complaint in the Magistrate Court of McKinley County, New Mexico. The complaint alleged that Farris had passed a worthless check in connection with the purchase of Indian jewelry from a New Mexico vendor. As a result of this complaint, a warrant for Farris' arrest issued from the McKinley County Magistrate Court. During the course of his investigation, Investigator Moeckel discovered that plaintiff's van was registered to an address in Clayton, Delaware. Moeckel contacted the Police Department in Clayton and passed along information concerning Farris, including instructions to arrest him on sight. By this time, Farris had left New Mexico and had traveled to Delaware. In accordance with the instructions from New Mexico, defendant W. Thomas Bowers, Chief of the Clayton Delaware Police Department, arrested Farris in Clayton on October 25, 1983.

At the arrest, Chief Bowers seized plaintiff's van, its contents and certain items of Indian jewelry from plaintiff's person. Chief Bowers then transported Farris to the Smyrna Delaware Police Station and placed him in its holding cell. Farris' van was taken to a parking lot near the Smyrna Police Station. On October 26, 1983, Farris was arraigned and remanded to the Delaware Correctional Center, also located in Smyrna, to await extradition to New Mexi-

1. At oral argument, the parties represented to the Court that defendants Town Council of Smyrna, Delaware, Smyrna Police Department, and John Does 16–20 shall be voluntarily dismissed from this action. The parties have since filed a Stipulation of Dismissal to the same

effect. Docket Item ("D.I.") 47. Accordingly, the Court shall not consider the Motions to Dismiss filed by the Town Council of Smyrna, the Smyrna Police Department, or John Does 16–20.

co. He remained incarcerated until November 23, 1983, at which time he was released on bail. Farris alleges that his van remained at the lot near the Smyrna Police Station for several days following his October 25 arrest. At that time the van was moved to a garage in Clayton where it remained until approximately November 15.

Plaintiff alleges that Chief Bowers and defendants John Does 16–20, whose identities are unknown and who have since been dismissed as defendants, removed jewelry and personal items from the van on October 26, 1983, while it was still parked at the lot near the Smyrna Police Station. He also alleges that Chief Bowers and other unknown defendants identified as John Does 11–15 entered the van while it was parked at the garage in Clayton and removed additional items of jewelry and personal property.

On or about November 10, 1983, at the request of New Mexico authorities, Chief Bowers applied for and was issued a search warrant by the appropriate Delaware court. The warrant authorized the search of plaintiff's van and the seizure of checks and certain enumerated items of jewelry that Farris had allegedly purchased with the worthless check in New Mexico. Farris alleges that, while executing the warrant, Chief Bowers seized not only the items described in the warrant, but also photographic equipment, jewelry and plaintiff's personal belongings, none of which were related to the items enumerated in the warrant. Chief Bowers allegedly placed these items in a storage room in the Clayton Municipal Building. According to Farris, Chief Bowers and John Does 11–15 entered the storage room and removed his jewelry and other personal property sometime between November 15 and November 29, 1983.

On or about November 29, Investigator Moeckel and defendant Heavy Howlett, a Transportation Officer for the McKinley County Sheriff's Department, traveled to Clayton to collect physical evidence related to the criminal charges pending against Farris in New Mexico. According to Farris, no search warrant or other authorization to seize and transport his property was ever issued to Howlett or Moeckel by any New Mexico court. He also alleges that Howlett and Moeckel were acting under orders issued by defendant Benny Padilla, the McKinley County Sheriff, or others in the McKinley County Sheriff's Department or on the McKinley County Board of Commissioners.

Upon their arrival in Delaware, Chief Bowers permitted Howlett and Moeckel to examine the items seized from Farris' van. On November 30, 1983, Howlett and Moeckel personally took a substantial quantity of Farris' property back to New Mexico. The remainder was allegedly shipped to New Mexico via bus through arrangements made by Chief Bowers.

Farris alleges that Howlett and Moeckel appropriated to their own use certain items of his property. The remaining items were placed in a property room at the McKinley County Sheriff's Department, along with the items shipped by bus from Delaware. Farris alleges that a substantial portion of the property which was to be shipped by bus never arrived in New Mexico, and was either appropriated by Chief Bowers for his personal use or lost in transit due to the gross negligence of Chief Bowers or John Does 11–15. Farris also alleges that, between November 30, 1983, and February 8, 1984, either Moeckel, Howlett, or some other unknown defendants identified as John Does 1–10 entered the property room at the McKinley County Sheriff's Department and removed items of plaintiff's property and converted it to their own use.

Farris alleges that, on numerous occasions, he asked the defendants to return his property. Although some property has been returned, Farris alleges that property valued in excess of $150,000.00 is still missing.

## II. MOTIONS TO DISMISS.

### A. *Standard of Review.*

All of the remaining defendants have moved to dismiss the Complaint. Separate briefs were filed on behalf of: (1) The

Town Council of Clayton ("Clayton Town Council"); (2) Chief Bowers, John Does 11–15, and the Clayton Police Department ("Clayton Defendants"); and (3) Dennis Moeckel, Heavy Howlett, John Does 1–10, Sheriff Benny Padilla, individually and in his official capacity as Sheriff of McKinley County and the Board of Commissioners of McKinley County ("New Mexico Defendants").

Defendants' moving papers are styled as motions to dismiss. However, since the parties have referred to matters outside the pleadings, the motions presently before the Court shall be treated as motions for summary judgment and disposed of in accordance with Fed.R.Civ.P. 56(c). *See* Fed. R.Civ.P. 12(b); *Devex Corp. v. General Motors Corp.*, 579 F.Supp. 690, 693 n. 3 (D.Del.1984), *aff'd sub nom.* 746 F.2d 1468 (3rd Cir.1984) (citing *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3rd Cir.1982).

Under Rule 56(c), the Court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of identifying and drawing to the Court's attention those portions of the relevant documents which, in the movant's view, demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). But when a motion is made and adequately supported, the non-moving party must go forward with specific facts establishing that there is a genuine, triable issue of fact. *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3rd Cir.1985), *cert. denied*, — U.S. ——, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). Further, the disputed factual issue must be "material to the resolution of the dispute." *EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 218 (3rd Cir. 1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Disputed facts not material to the resolution of the controversy will not bar the entry of summary judgment. *Id.* However, any doubt as to the existence of material issues of facts shall be resolved against the moving party and any reasonable inferences to be drawn from the facts presented shall be resolved in favor of the nonmoving party. *Devex Corp. v. General Motors Corp.*, supra, 579 F.Supp. at 693 n. 3.

III. DISCUSSION.

The motions to dismiss filed on behalf of the Clayton Town Council, the Clayton Defendants and the New Mexico Defendants raise myriad issues calculated to test the adequacy of Farris' Complaint. Principal among the issues raised by these motions are: (1) whether Farris has adequately alleged a municipal policy, custom or established state procedure against the municipal defendants; (2) whether Farris' § 1983 claims are foreclosed by the Supreme Court's decisions in *Parratt v. Taylor* and *Hudson v. Palmer;* (3) whether Chief Bowers is immune from suit under the doctrine of qualified immunity; (4) whether Farris may recover punitive damages from the municipal and individual defendants; (5) whether plaintiff may name John Doe defendants in this action; (6) whether the Court has jurisdiction over Farris' state law claims; and (7) whether the defendants are entitled to statutory immunity under the Delaware and New Mexico Tort Claims Acts. These issues, some of which pertain to more than one group of defendants, will be discussed seriatim.

A. *Section 1983 Issues.*

In pertinent part, 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (1982).

The initial inquiry in any § 1983 action focuses on two elements: (1) whether the

conduct at issue was committed by person(s) acting under color of state law; and (2) whether the conduct complained of deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 665 (1986) (*Parratt* overruled to extent it states that negligent conduct by state officials is actionable under § 1983). The defendants in this action do not seriously contend that the "under color of state law" requirement is not satisfied. Here, as in *Parratt*, "[defendants] were, after all, state employees in positions of considerable authority." *Parratt*, 451 U.S. at 535–36, 101 S.Ct. at 1912–13. The defendants' arguments are chiefly directed to the second element, that is, whether Farris has been deprived of any right, privilege or immunity secured by the Constitution or laws of the United States. *Parratt, supra*, 451 U.S. at 535, 101 S.Ct. at 1912.

Farris claims that the defendants have deprived him of property without due process of law, a violation of his Fourteenth Amendment rights. D.I. # 1—Complaint, ¶¶ 51, 55, 56, 60, 61, 65, 66. In claims involving deprivations of property, the circumstances surrounding the alleged deprivation determine which of two analytically distinct approaches the Court must follow. *See Cohen v. City of Philadelphia*, 736 F.2d 81, 84 (3rd Cir.1984), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360. The difference in approach stems from the crucial distinction that must be made between, on the one hand, a claim that an established state procedure fails to satisfy the rudiments of the due process clause and, on the other, a claim of property deprivation resulting from the random and unauthorized misconduct of state employees. *Parratt, supra*, 451 U.S. at 542, 101 S.Ct. at 1916 (citing *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir.1975), *modified en banc*, 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978)).

The former factual setting—where the state procedure itself causes the deprivation—presents a classic understanding of a deprivation of property behind which the state itself is the animating force. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982) (post-deprivation remedies do not accord due process where deprivation of property is caused by conduct taken pursuant to established state procedure); *Stana v. School District of Pittsburgh*, 775 F.2d 122, 130 (3rd Cir.1985). An established state procedure, custom or policy that fails to pass muster under the due process clause cannot generally be remedied by post-deprivation process. *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 195 n. 14, 105 S.Ct. 3108, 3122 n. 14, 87 L.Ed.2d 126 (1985); *Stana, supra*, 775 F.2d at 129. In this situation, since the state procedure itself destroys the entitlement without due process, the state or its entity is in a position to know that a deprivation is about to occur. *Logan, supra*, 455 U.S. at 436, 102 S.Ct. at 1158 (citations omitted). Where the state is in a position to know that a deprivation is about to occur, it is generally able to provide predeprivation process; consequently, courts usually regard post-deprivation process as inherently inadequate. *Id.; Stana, supra*, 775 F.2d at 130. A § 1983 action based upon a denial of procedural due process pursuant to an established state procedure may be maintained in federal court regardless of the availability of state judicial remedies. *Stana, supra*, 775 F.2d at 130.

In the latter situation, where deprivations of property occur or are effected through the random and unauthorized conduct of a state employee, whether it be negligent or intentional, the state is in a radically different posture with respect to its ability to anticipate and guard against such deprivations. *Compare Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984) (random and unauthorized intentional conduct by state employee) *and Parratt v. Taylor, supra*, 451 U.S. at 536–37, 101 S.Ct. at 1913–14 (random, unauthorized, negligent depriva-

tion by state employee) *with Logan v. Zimmerman Brush Co., supra,* 455 U.S. at 436, 102 S.Ct. at 1158 (property deprivation caused by established state procedure). Where the conduct causing the deprivation is random and unauthorized, rather than effected pursuant to an established state procedure, no claim is stated under § 1983 so long as state law affords the plaintiff an adequate post-deprivation remedy. *Hudson v. Palmer, supra,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393. This rule takes account of the Supreme Court's recent position that, following a random, unauthorized deprivation, the state's action is not complete and no Fourteenth Amendment violation has occurred unless the state refuses to redress the deprivation by providing an adequate post-deprivation remedy. *Id.* & n. 14, 104 S.Ct. at 3204 n. 14; *Cohen v. City of Philadelphia, supra,* 736 F.2d at 84. Farris' Complaint and the Defendants' Motions to Dismiss raise issues relevant to both theories of recovery.

### 1. *Municipal Liability.*

A municipality or other governmental entity may be subjected to liability under Section 1983 for unconstitutional deprivations of property where the action alleged to be unconstitutional executes or implements a governmental policy or custom. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986); *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

The facts alleged in Farris' Second and Third Causes of Action implicate each of the municipal entities named in this lawsuit. D.I. #1—Complaint, ¶¶ 52–56, 57–61. In his Second Cause of Action, Farris alleges that the conduct of defendants Moeckel, Howlett and John Does 1–10 was undertaken at the direction of and in furtherance of the official policies, practices and objectives of Sheriff Padilla, of the McKinley County Sheriffs Department, and the McKinley County Board of Commissioners. *Id.* at ¶ 53. Farris also alleges that both Sheriff Padilla and the Board of Commis-

sioners are responsible for the deprivations suffered by Farris due to their: (1) failure to provide adequate training and supervision in search and seizure techniques; (2) active encouragement of Moeckel, Howlett and John Does 1–10 to abandon proper police procedures in order to engender favorable local publicity or to make an example of Farris; and (3) failure to institute procedures which would require an inventory and accounting of seized property, provide a secure storage facility for seized property, and adequately screen and evaluate personnel. *Id.* at ¶¶ 54(a)–(d)(iii).

Similarly, in his Third Cause of Action, Farris avers that the endeavors of Chief Bowers of the Clayton Police Department and John Does 11–15 were undertaken at the direction of and in furtherance of the official policies, practices and objectives of the Clayton Police Department and Town Council. *Id.* at ¶ 58. In addition, Farris also seeks to hold the Clayton Police Department and Town Council liable on theories of failure to provide adequate training in search and seizure techniques, failure to supervise law enforcement personnel, and the governmental unit's active encouragement of Bowers and John Does 11–15 to abandon proper police practices in order to engender favorable local publicity. *Id.* at ¶ 59(a)–(d)(iii).

With respect to municipal liability, the issue before the Court is whether the averments in the Complaint are sufficient to satisfy *Monell's* requirement that the tortious conduct of the individual defendants be taken pursuant to municipal policy, custom or procedure.

The New Mexico defendants argue that the allegations against Sheriff Padilla and the McKinley County Commissioners represent nothing more than an attempt to hold the municipal defendants liable for the acts of individual employees by application of the theory of respondeat superior. D.I. #30—Opening Brief of New Mexico Defendants, at 8. Defendants are correct in noting that this theory of municipal liability is clearly proscribed by *Monell, supra,* 436 U.S. at 491, 98 S.Ct. at 2036, which stands for the proposition that in order to impose

liability on a municipal entity for the unconstitutional acts of its agents and employees, the offending acts must be ones which the municipality has officially sanctioned or ordered. *Pembaur v. City of Cincinnati, supra,* 106 S.Ct. at 1298 (citing *Monell, supra,* 436 U.S. 658, 98 S.Ct. 2018 (1978)). By distinguishing acts of the municipality, which implicate municipal *policy,* from acts solely attributable to employees of the municipality, which do not, the *Monell* Court intended to limit municipal liability to those acts for which the municipality is actually responsible. *Id.*

Post-*Monell* developments in the law indicate that the terms official policy, custom or procedure, the predicates to municipal liability, are elastic concepts that encompass a number of paradigmatic factual situations. Among these situations are those in which a "properly constituted legislative body" makes a single decision—"whether or not that body had taken similar action in the past or intended to do so in the future." *Pembaur, supra,* 106 S.Ct. at 1298 (citing *Owen v. Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). In *Pembaur,* the Supreme Court recently noted that a decision to adopt a particular course of action need not be made by a local legislative body in order to amount to official policy. *Pembaur, supra,* 106 S.Ct. at 1299. Under the rule stated in *Pembaur,* municipal liability may be predicated upon the decisions, acts or edicts of a single municipal officer so long as "the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* Furthermore, the Third Circuit expressly interpreted the Supreme Court's ruling in *Brandon v. Holt,* 469 U.S. 464, 472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985), to signify that "the actions of an official acting in his or her official capacity are to be equated with the actions of the city itself." *Stana, supra,* 775 F.2d at 130.

■ While I agree with defendants that a municipal entity may not be held liable for the actions of its agents under a theory of respondeat superior, I do not regard Farris' Complaint as an attempt to impose liability under such a theory. The allegations contained in ¶¶ 53–56 of the Complaint state a direct cause of action against the municipal entities. Farris specifically alleges that he suffered constitutional violations as a result of actions taken pursuant to governmental policy or custom. According to Farris, Moeckel and Howlett were acting in accordance with instructions given them by Sheriff Padilla, acting in his official capacity as Sheriff of McKinley County. As noted above, the Third Circuit's decision in *Stana, supra,* 775 F.2d at 130, makes clear that "the actions of an official acting in his or her official capacity are to be equated with the actions of the city itself." *See also Black v. Stevens,* 662 F.2d 181, 191 (3rd Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). Farris further alleges that the actions of Howlett and Moeckel were undertaken pursuant to and in furtherance of the official policies, practices and objectives of the McKinley County Board of Commissioners. It is therefore apparent on the face of the Complaint that Farris is not merely asserting municipal liability based on a theory of respondeat superior. The claims against the Clayton Police Department and Clayton Town Council are substantially similar to the claims filed against the New Mexico defendants. D.I. # 1— Complaint, at ¶¶ 57–61. As such, they need not be repeated here. Like the allegations against the municipal entities in New Mexico, the allegations against the Clayton defendants are not predicated upon a theory of respondeat superior.

■ Both sets of municipal defendants assert that certain affidavits filed on their behalf, which purport to contradict plaintiff's allegations and remain largely unrebutted by extraneous materials advanced by Farris, mandate the entry of summary judgment in their favor. *See* Fed.R.Civ.P. 56(e). The affidavits represent attempts to refute Farris' allegations of an official policy on the part of the municipal defendants. Specifically, the New Mexico defendants submitted the affidavit of Tony Sanchez, the current Sheriff of McKinley County,

New Mexico, who stated to the best of his knowledge, information and belief, that defendants Howlett and Moeckel had engaged in no prior acts similar to those alleged in the Complaint, and that no formal or informal policy of the Sheriff's Office authorized such acts. D.I. # 33, at A2–3. An affidavit submitted by Forrest G. Buffington, County Attorney of McKinley County, maintains that the Sheriff's Office is solely responsible for the actions of its officers, and that the County Board of Commissioners has no authority under New Mexico law to control the conduct of the Sheriff or his appointed deputies. *Id.* at A4–5. Chief Bowers' affidavit states that he personally kept none of the property taken from Farris' van. D.I. # 22, at A1–7.

The question arises whether these specific disavowals of official policy, on the part of the McKinley County Sheriff's Office, and responsibility, on the part of the McKinley County Board of Commissioners, are sufficient to show that there are no genuine factual issues requiring a trial and that the Sheriff's Department and the Board of Commissioners are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). At this preliminary stage in the litigation, I conclude that the answer to both questions is no. Defendant Bowers' affidavit is irrelevant to the issue of municipal liability. To the extent Chief Bowers denies any wrongdoing, whether or not within the scope of his official duties, his affidavit underscores genuine issues of material fact that preclude the entry of summary judgment in his favor. Further, plaintiff has made a sufficient showing that discovery is necessary to enable him to obtain facts to support the factual allegations stated in the Complaint. D.I. # 32, at A2–5. Fed.R.Civ.P. 56(f).

Similarly, I conclude that Farris is not required to refute the affidavits of Sheriff Sanchez and County Attorney Buffington in order to survive this motion for summary judgment. Federal Rule of Civil Procedure 56(e) provides that "when a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this Rule, must set forth the specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e). However, as the Supreme Court recently noted in *Anderson v. Liberty Lobby, Inc., supra,* 106 S.Ct. at 2511 & n. 5, the requirements of Rule 56(e) are tempered by Rule 56(f). Under Rule 56(f), the Court should refuse to enter summary judgment where the nonmoving party has not had the opportunity to discover evidence essential to his opposition of the motion. *Id.* at n. 5. In this case, the parties have not progressed beyond the pleading stage. Rather than answer the Complaint, all parties moved, as is their right, to dismiss the Complaint under Rule 12(b). Upon submission of affidavits, defendants' 12(b) motion was converted into a motion for summary judgment. No discovery has taken place.

Where, as here, counsel for the non-moving party has submitted an affidavit pursuant to Rule 56(f) which adequately explains counsel's inability to rebut the allegations contained in affidavits submitted by the New Mexico defendants, summary judgment is neither warranted nor appropriate. Furthermore, the substance of the affidavit submitted by plaintiff's counsel further convinces me that summary judgment would not be appropriate at this time. Counsel's affidavit relates an interview counsel conducted with defendant Howlett. During this interview, Howlett discussed prior incidents of embezzlement involving defendant Moeckel, of which the McKinley County Sheriff's Office was allegedly aware. D.I. # 36—Appendix A, at 2–3; Appendix B, at 5–7. *Compare Brandon v. Holt, supra,* 469 U.S. 464, 466–67, 105 S.Ct. 873, 875–76, 83 L.Ed.2d 878 (1985). It therefore appears likely that a clearly defined factual issue regarding the policies, practices or customs of the McKinley Coun-

ty Sheriff's Department will emerge upon the initiation of discovery.

I now turn to the question whether the McKinley County Board of Commissioners may be liable for unconstitutional conduct on the part of the Sheriff's Department. An affidavit submitted by McKinley County Attorney Forrest G. Buffington represents an attempt to put as much distance as possible between the Board of Commissioners and the various goings on at the McKinley County Sheriff's Department. Essentially, Buffington posits that the Board of Commissioners cannot be held liable because the Board lacks statutory authority to supervise or control the activities of the Sheriff's Department. Buffington avers that the Sheriff, an independently elected official, is solely responsible under New Mexico law for the actions of his deputies. D.I. # 3—Appendix to Opening Brief of New Mexico Defendants, at A4–5. According to Mr. Buffington, under New Mexico law, neither the Sheriff nor his deputies can be regarded as employees of the Board of Commissioners. *Id.* at A5.

As was the case in *Pembaur v. City of Cincinnati, supra,* 106 S.Ct. at 1300–01, a review of New Mexico law discloses that, under appropriate circumstances, both the McKinley County Sheriff's Department and the Board of Commissioners are endowed with policy-making authority. Under New Mexico law, the County Sheriff is the county officer endowed with primary law enforcement responsibility. N.M.Stat.Ann. § 4–41–2 (1978). *See also Sanchez v. Board of County Comm'rs. (Valencia),* 81 N.M. 644, 471 P.2d 678 (1970), *cert. denied,* 81 N.M. 668, 472 P.2d 382 (1970). Nonetheless, the Board of County Commissioners is empowered by statute to retain control over the "hiring, promotion, discharge and general regulation of the deputies and the employees of the county sheriff's office." *See* N.M.Stat.Ann. §§ 4–41–2, 5, 6 (1978). As such, I believe the relationship between the County and the Sheriff's Department to be so close as to render the County liable for any unconstitutional policies, practices or customs instituted by the Sheriff pursuant to which Farris' constitu-

tional rights may have been infringed. *Cf. Pembaur, supra,* 106 S.Ct. at 1300; *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Black v. Stevens,* 662 F.2d 181, 191 (3rd Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). This being the case, Farris correctly named the Board of Commissioners as defendants in this action pursuant to N.M.Stat.Ann. § 4–46–1, which provides "in all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the Board of County Commissioners."

2. *Procedural Due Process: The Scope of Parratt and Hudson.*

Both the Clayton defendants and New Mexico defendants Moeckel and Howlett advanced the argument that the Supreme Court's decisions in *Parratt v. Taylor, supra,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer, supra,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), mandate the dismissal of Farris' Complaint as to these defendants. Evidently, these defendants interpret *Parratt* and *Hudson* as establishing the broad principle that a deprivation of property does not amount to a violation of the Due Process Clause so long as the state provides a forum in which an adequate post-deprivation remedy may be had. *See* D.I. # 30—Opening Brief of New Mexico Defendants, at 6, 7; D.I. # 22—Opening Brief of Clayton Defendants, at 9–11. While I agree with the basic thrust of this proposition, nothing in *Parratt* and *Hudson,* or their progeny, suggests to me that the Supreme Court swept with so broad a brush. An inquiry into the availability of an adequate post-deprivation remedy should be made only in situations in which the *random and unauthorized* conduct of state agents has rendered it impracticable for the state to afford the plaintiff predeprivation process. *Stana, supra,* 775 F.2d at 130. Where the challenged action was effected pursuant to an established state procedure, policy or custom, an inquiry into the adequacy of state remedies is neither necessary nor appropriate since the state could have provided predeprivation process.

*Williamson Planning Comm'n v. Hamilton Bank, supra,* 473 U.S. at 195–96 n. 14, 105 S.Ct. at 3122 n. 14 (1985); *Logan v. Zimmerman Brush Co., supra,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Where, as here, plaintiff has adequately alleged that the actions of the individual officers were effected pursuant to and in furtherance of municipal policy, custom or practice, the rule established in *Parratt* neither applies nor acts as a bar to maintaining this § 1983 action in federal court. *Stana, supra,* 775 F.2d at 130. As discovery unfolds, it may become evident that Farris can establish no more than random and unauthorized acts on the part of the individual defendants, or it may become clear that the alleged deprivation occurred as a result of the individual defendants' unauthorized failure to follow an established state procedure. If this is shown to be the case, the rule announced in *Parratt* and extended in *Hudson,* will control. *See Cohen v. City of Philadelphia, supra,* 736 F.2d at 85. At present, however, Farris is entitled to the discovery that will permit him to make his case, if there is indeed one to be made, on the issue of municipal liability. The motions to dismiss filed by the Clayton defendants and New Mexico defendants Moeckel and Howlett based on the availability of state post-deprivation remedies is therefore denied. Consequently, at this stage of the proceedings, the Court need not address the issue whether the remedies provided by the States of New Mexico and Delaware are "adequate" under the Due Process Clause. *See Hudson v. Palmer, supra,* 468 U.S. at 535–37, 104 S.Ct. at 3204–05. *See also Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 671, 88 L.Ed.2d 677 (1986) (Blackmun, J., dissenting).

### 3. *Qualified Immunity.*

Chief Bowers, who has been sued in his personal capacity, asserts that he is immune from suit under the qualified immunity doctrine established in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow,* the Supreme Court stated that "government officials performing discretionary functions,

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738 (footnote and citations omitted). *See also Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2818, 86 L.Ed.2d 411 (1985). Plaintiff maintains that the facts recited above, which the Court must accept as true for the purposes of this motion, indicate that Chief Bowers violated Farris' Fourth Amendment rights by the "grossly excessive *scope* of Bowers' seizure of property found within the van," and infringed upon his Fourteenth Amendment rights by "Bowers' unlawful and unjustifiable *disposition* of the non-evidentiary property which he seized from Farris' truck and person." D.I. # 32—Plaintiff's Answering Brief, at 41 n. 15.

In the course of briefing these motions, Farris has repeatedly maintained that the factual allegations of the Complaint make out a violation of his Fourth Amendment rights based on the "grossly excessive scope" of the seizure of certain items of property from his van. *Id.* However, the question whether the allegations in Farris' complaint reveal Fourth Amendment violations is not properly before the Court. The claims stated in the Complaint are based solely upon deprivations of property without due process of law. The Complaint asserts damages flowing solely from the property deprivation, which occurred *after* the seizure in question. Farris fails to recite any damages resulting from the seizure itself. Although the plaintiff is free to amend his complaint to allege violations of his Fourth Amendment rights, I conclude that he has not made such claims at this time and I decline plaintiff's invitation to read them into the Complaint. *See* Fed.R.Civ.Pro. 15(a). Therefore, in considering whether Chief Bowers is immune from suit under *Harlow v. Fitzgerald, supra,* I need only consider Farris' Fourteenth Amendment claims.

■ *Harlow v. Fitzgerald, supra,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396

(1982), affords immunity to defendants who failed to observe a right only if that right was not clearly established at the time the defendant acted. *Id.* at 818–19, 102 S.Ct. at 2738. Thus the Court's inquiry is focused on the clarity of the law at issue at the time the alleged violation occurred. *Losch v. Borough of Parkesburgh,* 736 F.2d 903, 909–10 (3rd Cir.1984); *Lacey v. Borough of Darby,* 618 F.Supp. 331, 337 (E.D.Pa.1985) (interpreting *Losch* ); *Klitzman, Klitzman & Gallagher v. Krut,* 591 F.Supp. 258, 265 (D.N.J.1984) (interpreting *Losch* ), *aff'd,* 744 F.2d 955. If Chief Bowers appropriated and converted Farris' property to his own use, then clearly established rights were violated and there can be no question that the law clearly proscribed such conduct at the time the alleged actions occurred. Therefore, the Court cannot, on this record, rule that Chief Bowers is entitled to immunity.[2]

### 4. *Punitive Damages.*

■ Farris' Complaint requests relief in the form of punitive damages against the municipal entity defendants and the individual defendants. These various defendants have moved to dismiss Farris' prayer for punitive damages on various grounds. In light of the United States Supreme Court's decision in *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), Farris now concedes that municipal entities are immune from punitive damages under 42 U.S.C. § 1983. *Newport v. Fact Concerts, Inc., supra,* 453 U.S. at 271–72, 101 S.Ct. at 2762. His request for an award of punitive damages against the Board of Commissioners of McKinley County, the Clayton Police Department and the Clayton Town Council shall therefore be dismissed. Moreover, since official capacity suits against government officials "generally represent only another way of pleading an action against an entity of which an officer is an agent", *Monell, supra,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55, the Court shall dismiss Farris' prayer

for punitive damages against Sheriff Padilla, in his official capacity. As is so often the case, the Complaint in this case does not clearly indicate whether Chief Bowers has been sued personally, in his official capacity as Clayton Police Chief, or both. *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (citing *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878 (1985) (if complaint does not clearly specify whether municipal official has been sued in personal or official capacity, or both, the course of proceedings will normally indicate the type of liability sought to be imposed)). Consequently, to the extent Farris seeks to recover punitive damages from Chief Bowers in his official capacity as Police Chief, his prayer for punitive damages is barred by the rule announced in *Newport v. Fact Concerts, Inc., supra,* 453 U.S. at 271–72, 101 S.Ct. at 2762.

■ The remaining defendants, who have been sued in their individual capacities, are subject to punitive damages liability under the standard enunciated in *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). In *Smith,* the Court held that punitive damages may be recovered from individual defendants in certain § 1983 cases. *Smith v. Wade, supra,* 461 U.S. at 30, 35–36, 103 S.Ct. at 1625, 1629–30. Specifically, a fact finder may consider the appropriateness of an award of punitive damages where a defendant's conduct evinces reckless or callous indifference to the plaintiff's federally protected rights, or when the defendant's actions spring from evil motive or intent. *Smith v. Wade, supra,* 461 U.S. at 56, 103 S.Ct. at 1640.

■ Chief Bowers argues that plaintiff's prayer for punitive damages must be dismissed as to him on the ground that "he was at all times motivated solely by a desire to secure property he believed to be the fruits of a crime." D.I. # 22, at 21. However, based on the facts alleged in

---

**2.** Since plaintiff does not currently allege Fourth Amendment violations, the Court cannot at this time determine whether Chief Bowers is entitled to immunity in executing the search

warrant. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Farris' Complaint, as well as the facts admitted in Chief Bowers' affidavit, the Court is unwilling to say as a matter of law that a reasonable jury could not find that Chief Bowers' actions evinced reckless or callous indifference to Farris' federally protected rights, or that his actions resulted from evil motive or intent. *Smith v. Wade, supra,* 461 U.S. at 56, 103 S.Ct. at 1640. For example, the record reflects that while surveying Farris' van in the presence of Chief Bowers, Moeckel and Howlett took two hats and two pairs of cowboy boots from the van. D.I. # 22—Affidavit of W. Thomas Bowers, at ¶ 15. Nothing in the record indicates that Chief Bowers had a reasonable basis for believing that those items had anything to do with the crime Farris was then accused of having committed. *Id.* at ¶ 12. Apparently, Chief Bowers was not alarmed when Moeckel and Howlett took "hats, boots, some camera equipment and some jewelry" on the plane back to New Mexico with them, rather than arranging for the shipment of these items directly to the McKinley County Sheriff's Department. *Id.* at ¶ 16. Armed with this knowledge, Chief Bowers then complied with Moeckel's instruction that he mail eleven cardboard boxes containing Farris' personal property to Moeckel's home address in New Mexico, rather than to the McKinley County Sheriff's Department. *Id.* Having disposed of these items, Bowers did not prepare an inventory, receipt, or even so much as a list of the items that were shipped, mailed or hand-carried by Moeckel and Howlett to New Mexico. These facts, coupled with Farris' allegations of intentional deprivations of property by the individual defendants, are certainly sufficient to warrant a fact finder's consideration of the appropriateness of an award of punitive damages. On this record, the Court will not foreclose that possibility.

## B. STATE LAW ISSUES.

### 1. *The Propriety of Naming "John Doe" Defendants.*

In his Complaint, Farris purports to name certain unknown "John Does" as defendants in this action. Specifically, he alleges that John Does 1–10 were employees or agents of the McKinley County Sheriff's Office or Board of Commissioners and that John Does 11–15 were employees or agents of the Clayton Police Department or Town Council. D.I. # 1—Complaint, ¶¶ 7, 12. Farris alleges that these individuals participated with the other named defendants in the unlawful conversion of his property. The New Mexico defendants have moved to dismiss John Does 1–10 on the ground that the naming of such unknown defendants in a Complaint is not permissible under Delaware law. D.I. # 30 —Opening Brief of New Mexico Defendants, at 14.

The practice of naming fictitious "John Doe" defendants in an original Complaint operates to preserve the plaintiff's right to later name a defendant whose identity was not known at the time the Complaint was filed. Although the Federal Rules of Civil Procedure do not speak to this point directly, the practice is well-established. *See, e.g., Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Keno v. Doe,* 74 F.R.D. 587, 588 n. 2 (D.N.J.1977), *aff'd,* 578 F.2d 1374 (3rd Cir.1978).

In *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171 (3rd Cir.1977), our Court of Appeals, in discussing "relation back" under Fed.R.Civ.P. 15(c), noted that "[r]eplacing a 'John Doe' caption with a party's real name amounts to 'changing a party' within the meaning of Rule 15(c), and thus will only relate back if all three conditions specified in the Rule have been satisfied." 550 F.2d at 174. Presumably, by describing the circumstances in which amendment of a "John Doe" complaint can relate back, the Court implicitly recognized that under Fed.R.Civ.P. 15(c), a "John Doe" complaint is not impermissible per se. *See also Bivens v. Six Unknown Agents, supra,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 198 (3rd Cir. 1984).

However, this case is not in the proper procedural posture for the Court to decide the issue whether federal or Delaware law

governs questions involving fictitious name practice.[3] Under the Federal Rule, the inquiry is not generally addressed to the propriety of naming a "John Doe" defendant in the original Complaint, but rather to whether an amendment to name the actual party relates back to the date of the original pleading. *See, e.g., Deary v. Three Un-Named Police Officers*, 746 F.2d at 198. Under *Varlack, supra*, as noted above, such an amendment amounts to "changing a party" under Rule 15(c), and thus must meet the conditions enumerated in the Rule. *Varlack*, 550 F.2d at 174. First, the proposed amendment must arise from the same transaction or occurrence as the one set forth in the original Complaint. Second, in order to relate back, the amendment must satisfy the notice provisions of Rule 15(c). Similarly, Delaware's Super.Ct. R.Civ.P. 15(c), which is identical to Fed.R. Civ.P. 15(c), permits relation back of amendments adding parties when the requirements of notice and identity of interest have been met. *Mergenthaler v. Asbestos Corp. of America*, 500 A.2d 1357 (Del.Super.1985). Therefore, under either Rule, the Court is not in a position to decide the propriety of such an amendment until a motion to amend is properly before the Court.[4]

### 2. The Court's Jurisdiction Over State Law Claims.

▪ The Clayton defendants urge dismissal of the claims asserted in plaintiff's fifth and sixth causes of action on the ground that the Court lacks diversity jurisdiction over these state law claims. *See* 28 U.S.C. § 1332. The defendants maintain that Farris is not in fact a resident of Pennsylvania, as asserted in his Complaint, but is actually a resident of Delaware. Since he has named certain Delaware defendants, the argument proceeds, he has destroyed complete diversity. *See Owen*

*Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) (diversity jurisdiction exists only when each defendant is a citizen of a different State from each plaintiff). Based on the doctrine of pendent jurisdiction articulated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), I reject the contention that the Court lacks jurisdiction over the state law claims.

In § 1983 cases, state tort claims are commonly joined with § 1983 claims if both types of claims arise from the same facts. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1952, 85 L.Ed.2d 254 (1985) (O'Connor, J., dissenting). In such cases, the district court may exercise jurisdiction over the state law claims even if diversity jurisdiction is lacking. *Gibbs, supra*, 383 U.S. at 725, 86 S.Ct. at 1138. Where, as here, the court has federal question jurisdiction over a substantial claim asserted under § 1983, it may exercise jurisdiction over a state law claim that arises from a common nucleus of operative fact. *Id.* Based on *Gibbs, supra*, I find that the Court has jurisdiction over the pendent claims. The interests of judicial economy, convenience and fairness to the litigants weigh in favor of trying the entire case in one judicial proceeding. Since the Court has pendent jurisdiction over Farris' fifth and sixth causes of action, it need not decide the question whether Farris is in fact a resident of Pennsylvania or Delaware for the purposes of diversity jurisdiction.

### 3. Statutory Immunity Under the Delaware and New Mexico Tort Claims Acts.

The Clayton defendants contend that they are statutorily immune from damages liability on the claims asserted in Counts V and VI, which state theories of recovery

---

**3.** The Court notes that in *Britt v. Arvanitis*, 590 F.2d 57 (3rd Cir.1978), the Third Circuit held that a New Jersey rule allowing relation back of amendments to "John Doe" complaints was a procedural rule, which was not controlling in diversity actions in federal courts in New Jersey. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

**4.** At such time, if necessary, the Court will decide whether federal or Delaware law governs this issue. However, since the standards are identical, there would appear to be no difference in outcome under either Rule.

based on common law negligence and conversion. The defendants base their claim to immunity on the State of Delaware's County and Municipal Tort Claims Act ("Delaware Act"), 10 *Del.C.* §§ 4010–4013. Title 10 *Del.C.* § 4011(a), the general immunity provision, states:

> (a) Except as otherwise provided by statute, all governmental entities and their employees shall be immune from any and all tort claims seeking recovery of damages.

10 *Del.C.* § 4011(a).

The parties do not dispute that Chief Bowers and John Does 11–15 are "employees" within the meaning of 10 *Del.C.* § 4010(1). Likewise, there is no disagreement that the Clayton Town Council and the Clayton Police Department are "governmental entities" as defined in 10 *Del.C.* § 4010(2). D.I. # 32—Plaintiff's Answering Brief, at 32. Therefore, under § 4011, the Clayton defendants are entitled to immunity from damages liability on the state common law tort claims unless the plaintiff can show that some or all of the Clayton defendants fall within one or more of the exceptions to immunity set forth in the Delaware Act. *See* 10 *Del.C.* §§ 4011(c), 4012.

■ To this end, Farris points to § 4011(c), which provides:

> (c) An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

10 *Del.C.* § 4011(c). Farris argues that the Town Council, the Police Department, Chief Bowers and John Does 11–15 fall within the exception to immunity created by § 4011(c). With respect to the municipal entities, I disagree. By its terms, § 4011(c) exempts only employees, not entities. I therefore find that the immunity conferred upon the municipal entity defendants by § 4011(a) is not stripped away by the exception provided in § 4011(c). An employee's exposure to liability under § 4011(c) is contingent upon the existence of one of two factual imperatives. In order to bring Chief Bowers and John Does 11–15 under the immunity exception of § 4011(c), the Court must find that the conduct occurred outside the scope of their employment or was committed with wanton negligence or with willful and malicious intent. 10 *Del.C.* § 4011(c).

■ Based upon the allegations in the Complaint, as well as the reasoning set forth in Part III.A.4, *post*, the Court believes there is evidence in the record upon which a finder of fact could find that these defendants acted outside the scope of their employment or with wanton negligence or willful and malicious intent. Based upon the character of the allegations in the Complaint and the record as developed thus far, I cannot find that Chief Bowers and John Does 11–15 are entitled to immunity under § 4011(c).

Farris advances two arguments to support his contention that the Delaware governmental entities are not immune from suit. The Court need not tarry long on the first one. Farris states in his Brief that:

> By its terms, § 4011(c) seems to imply that this exception to governmental immunity applies only to actions against "employees". As such it would seem that § 4011(c) does *not* create an exception to governmental immunity for the municipal defendants herein. *But see Smith v. New Castle County Vo-Tech School District,* 574 F.Supp. 813 (D.Del. 1983), wherein it was held that the Delaware *State* Tort Claims Act, 10 *Del.C.* §§ 4001–4005 *does* permit a cause of action to be maintained against a school district on the basis of an employee's gross and/or wanton negligence and/or recklessness. Perhaps the same respondeat superior reasoning should be deemed applicable to the County and Municipality Tort Claims Act (sic), i.e., § 4011(c) should be construed to permit the imposition of vicarious liability upon a municipality for a municipal employee's wanton negligence and/or willful and malicious wrongdoing.

D.I. # 32—Plaintiff's Answering Brief, at 34 n. 8. Given the plain wording of the statute, it would be inappropriate to engraft respondeat superior liability onto § 4011(c), which addresses itself solely to employees, not municipal entities. Further, I do not read *Smith v. New Castle County, supra,* 574 F.Supp. at 822 n. 7 & 8, as having imposed liability on the school district on a theory of respondeat superior. Indeed, the Court expressly declined to decide that issue. *Id.*

 Farris next contends that 10 *Del.C.* § 4012, which sets forth three exceptions to immunity applicable to governmental entities, renders the two municipal defendants amenable to suit on the state law claims. Specifically, Farris maintains that the immunity exception stated in § 4012(2) applies to the instant case. Under § 4012(2), a governmental entity is subject to liability for "its negligent acts or omissions causing property damage, bodily injury or death ... (2) in the construction, operation or maintenance of any public buildings or the appurtenances thereto ..." 10 *Del.C.* § 4012(2).[5] Farris contends the allegations in the Complaint that purport to impose liability on the municipal entities for the negligent operation of an automobile impound lot and evidence storage area, place the municipal entity defendants squarely within the exception to immunity stated in § 4012(2).

I find this argument unpersuasive. My concern centers around the character of the allegations stated in the Complaint, versus the character of the acts or omissions exempted from immunity under § 4012. Section 4012 exempts municipal entities from immunity only for *negligent* acts or omissions. 10 *Del.C.* § 4012. As applied to governmental entities, the Tort Claims Act does not create an exemption from its blanket immunity provision for conduct that is intentional, willful, malicious, reckless or grossly negligent. 10 *Del.C.* §§ 4010–4013. However, in ¶ 60 of the Complaint, after

having described the alleged acts and omissions of the Clayton defendants, Farris characterized these alleged occurrences as "manifest[ing] a malicious intent on the part of said governmental units to deprive Farris of his property without due process of law." D.I. # 1—Complaint, ¶ 60. In the alternative, Farris characterized these events as "manifesting a reckless and malicious disregard to Farris' right to due process of law...." *Id.* The plain wording of the statute simply does not provide an exception to immunity for acts or omissions that transcend simple negligence. *See* 10 *Del.C.* § 4012(2). This holding is consistent with the Court's rulings in Parts III.A. 1–2, *post,* since mere negligence will not support a claim for deprivation of property under the due process clause. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). I therefore find the governmental entity defendants immune under the Delaware County and Municipal Tort Claims Act.

I turn now to the degree of immunity provided the McKinley County Board of Commissioners and Sheriff Padilla by the New Mexico Tort Claims Act. N.M.Stat. Ann. §§ 41–4–1—41–4–14 (1978). Both the Board of Commissioners and Sheriff Padilla contend the Act shields them from liability on the state common law tort claims that comprise Counts V and VI. The general immunity provision in the New Mexico Act provides:

> A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by sections 41–4–5 through 41–4–12 NMSA 1978. Waiver of this immunity shall be limited to and governed by the provisions of sections 41–4–13 through 41–4–25 NMSA 1978.

N.M.Stat.Ann. § 41–4–4(A) (1978).

Under the Act, a " 'governmental entity' means the state or any local public body."

---

**5.** 10 *Del.C.* §§ 4012(1) and (3), which provide exceptions to immunity for negligent acts or omissions resulting from a governmental entity's ownership, maintenance or use of certain types of motor vehicles or from an entity's accidental discharge of pollutants, are not even remotely applicable to the allegations in this case. Farris has not argued these two exceptions, and the Court shall not consider them.

N.M.Stat.Ann. § 41–4–3(B). A local public body is defined as "all political subdivisions of the state and their agencies, instrumentalities and institutions ...." N.M.Stat. Ann. § 41–4–3(C). The term "public employee" specifically includes, but is not limited to, elected or appointed officials and law enforcement officers. N.M.Stat.Ann. §§ 41–4–3(E)(1) & (2).

Hence it appears that both Sheriff Padilla and the McKinley County Board of Commissioners are immune from tort liability pursuant to § 41–4–4(A) so long as they were acting within the scope of duty and unless the immunity conferred by § 41–4–4(A) has been waived by some specific provision contained in the Act. With respect to law enforcement officers, the New Mexico Supreme Court construed § 41–4–4(A) to mean that law enforcement officers are not personally liable for malicious or fraudulent torts when committed while acting within the scope of their duties, except as provided in § 41–4–12. *Methola v. County of Eddy*, 95 N.M. 329, 622 P.2d 234 (1980). Farris maintains that § 41–4–12, which sets forth an exception to immunity, is applicable to both the Sheriff and the Board of Commissioners. Section 41–4–12 provides:

*Liability; law enforcement officers.* The immunity granted pursuant to subsection A of section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunity secured by the Constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M.Stat.Ann. § 41–4–12 (1978).

Under the Act, a "law enforcement officer" is defined as "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members

of the National Guard when called to active duty by the Governor." N.M.Stat.Ann. § 41–4–3(D). With regard to the Board of Commissioners, Farris admittedly can proffer no cases in support of his theory of liability under § 41–4–12. I find that the McKinley County Commissioners, who are elected officials with no law enforcement functions as defined in § 41–4–3(D), do not fall within the exception. *See Anchondo v. Corrections Dep't*, 100 N.M. 108, 666 P.2d 1255 (1983). Since there is no specific provision exempting the Commissioners from immunity and since statutes in derogation of the common law must be strictly construed, the Court declines to find an exception to immunity where one is not clearly indicated in the statute. *Schear v. Board of County Comm'rs*, 101 N.M. 671, 687 P.2d 728 (1984); *Methola v. County of Eddy, supra*, 95 N.M. 329, 622 P.2d 234 (1980).

Sheriff Padilla, on the other hand, does come within the purview of § 41–4–12. In *Methola v. County of Eddy, supra*, 622 P.2d 234 (1980), the Supreme Court of New Mexico held that a County Sheriff is a law enforcement officer within the meaning of § 41–4–3(D). The statutory scheme in New Mexico exposes law enforcement officers to liability for damages resulting from certain enumerated torts, including violations of property rights or deprivations of any rights, even if the law enforcement officer who caused the deprivation was acting within the scope of his or her duties. § 41–1–12 NMSA 1978. It is also clear that the Sheriff need not have been the primary actor to be found liable under the statute. *See Schear v. Board of County Comm'rs*, 101 N.M. 671, 687 P.2d 728 (1984). Farris has adequately alleged that the actions of Sheriff Padilla caused him to suffer property deprivations. Therefore, at this stage in the proceedings, I cannot hold that Sheriff Padilla is immune from damages under the New Mexico Tort Claims Act.

## IV. CONCLUSION.

To summarize, with respect to the issue of municipal liability and whether Farris has adequately alleged an established state

procedure under § 1983, the Motions to Dismiss filed on behalf of the Clayton Town Council, the Clayton Police Department, Sheriff Padilla of the McKinley County Sheriff's Department, and the McKinley County Board of Commissioners are denied. The Motions to Dismiss plaintiff's § 1983 claims because adequate post-deprivation state remedies satisfy the requirements of the Due Process Clause are denied with respect to Chief Bowers, John Does 11–15, the Clayton Police Department, Dennis Moeckel, Heavy Howlett, and John Does 1–10. Chief Bowers' Motion to Dismiss on the ground of qualified immunity is denied. The Motions to Dismiss plaintiff's prayer for punitive damages are granted as to the McKinley County Commissioners, the Clayton Police Department, the Clayton Town Council, Sheriff Padilla, in his official capacity as Sheriff of McKinley County, and Chief Bowers, in his official capacity as Clayton Police Chief. The Motion to Dismiss plaintiff's prayer for punitive damages is denied with respect to Chief Bowers in his individual capacity. The New Mexico defendants' Motion to Dismiss on the ground that the naming of "John Doe" defendants is not permissible under Delaware law is denied. The Clayton defendants' Motion to Dismiss based on lack of complete diversity is denied. On the issue of statutory immunity to plaintiff's state law causes of action under the Delaware County and Municipal Tort Claims Act, the Motions to Dismiss are granted as to the Clayton Town Council and the Clayton Police Department, and denied as to Chief Bowers and John Does 11–15. The Motions to Dismiss plaintiff's state law causes of action under the New Mexico Tort Claims Act are granted as to the McKinley County Commissioners, and denied as to Sheriff Padilla. An Order will issue in conformity with this Opinion.