666 P.2d 1255

Oscar ANCHONDO, et al., Plaintiffs,

v.

CORRECTIONS DEPARTMENT of the
State of New Mexico, et al.,
Defendants.

No. 14827.

Supreme Court of New Mexico.

June 10, 1983.

E. Justin Pennington, Kirk Garcia, Albuquerque, for plaintiffs.

Cherpelis & Nivala, Max Shepherd, Albuquerque, for defendants.

## OPINION

STOWERS, Justice.

This matter is before this Court upon certification from the United States District Court for the District of New Mexico, Honorable Juan G. Burciaga, District Judge, pursuant to Section 34–2–8, N.M.S.A. 1978 (Repl.Pamp.1981). The question certified to this Court pursuant to Section 34–2–8 is as follows:

Are the Secretary of Corrections and the Warden of the State Penitentiary in Santa Fe "law enforcement officers" within the meaning of Section 41–4–3(D), N.M.S.A. 1978 (Repl.Pamp.1982)?

In our opinion they are not.

Section 41–4–3(D) of the New Mexico Tort Claims Act, §§ 41–4–1 through 41–4–29, N.M.S.A. 1978 (Repl.Pamp.1982), defines "law enforcement officer." To construe the question before us, however, this Court must look at the Legislature's intent in defining both "law enforcement officer" and "public employee" within the Tort Claims Act. Section 41–4–3(D) defines "law enforcement officer" as

any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

Section 41–4–3(E), N.M.S.A. 1978 (Repl. Pamp.1982) defines "public employee" as

any officer, employee or servant of a governmental entity, including elected or appointed officials, law enforcement officers and persons acting on behalf or in

service of a governmental entity in any official capacity, whether with or without compensation, but the term does not include an independent contractor.

From these definitions in the Tort Claims Act, it appears obvious that the Legislature intended to make a necessary distinction between public employees and law enforcement officers. The fact that there are two specific definitions indicates that the Legislature intended to differentiate and to require one to look at what a person actually does, his duties and responsibilities. (We note that subsequent legislation enlarging the definition of "public employee" has no effect on this opinion and in no way alters it. *See* 1983 N.M.Laws, ch. 242, § 1(E)).

The Secretary of Corrections spends all his time in duties and responsibilities that are more accurately categorized as work of a public employee than work of a law enforcement officer. He is a member of the "executive cabinet" headed by the governor. § 9–3–4, N.M.S.A.1978 (Cum.Supp. 1982); *see generally* §§ 9–1–1 through 9–1–12, N.M.S.A. 1978 (Repl.Pamp.1980). His duties and general powers are specified in the "Corrections Department Act," Section 9–3–1 through 9–3–12, N.M.S.A. 1978 (Repl. Pamp.1980 and Cum.Supp.1982) and in Section 33–1–6, N.M.S.A. 1978 (Cum.Supp. 1982). According to these statutory provisions the Secretary of Corrections must manage all operations of the department (§ 9–3–5 A), exercise general supervisory authority over all department employees (§ 9–3–5 B(1)), delegate authority to subordinates as he deems necessary (§ 9–3–5 B(2)), organize the department into the most efficient organizational units (§ 9–3–5 B(3)), issue and enforce orders and instructions (§ 9–3–5 B(5)), and conduct research and studies that will improve the operations of the department (§ 9–3–5 B(6)). Although these are only a few examples of the powers and duties of the Secretary of Corrections, it is apparent that according to statute, the Secretary possesses none of the traditional duties that are defined for law enforcement officers. The Secretary of Corrections is basically the chief executive or administrative officer of the state's correction system. § 9–3–4, N.M.S.A. 1978 (Cum.Supp.1982). The majority, if not all of his time is spent on administrative duties.

As far as the Warden is concerned, the vast majority of his duties and responsibilities are those of a public employee and not a law enforcement officer. The Warden of the State Penitentiary is director of one of the divisions of the corrections department known as the "adult maximum security division." As a director of an organizational unit of the corrections department the Warden has all the powers and duties enumerated in the specific laws involved. § 9–3–12, N.M.S.A. 1978 (Repl.Pamp.1980). However, Section 9–3–12 specifies that "the carrying out of those powers and duties shall be subject to the direction and supervision of the secretary and he [the secretary] shall retain the final decision-making authority and responsibility * * *." Therefore, the Warden, as director of the adult maximum security division, acts as an administrative officer subject to the direction and supervision of the Secretary of Corrections.

In addition to Section 9–3–12, Section 33–2–1 through 33–2–47, N.M.S.A. 1978 (Orig.Pamp. and Cum.Supp.1982) specifically refer to the Warden and his duties. These duties include keeping a register of prisoners (§ 33–2–16), keeping accounts (§ 33–2–17), collecting and disbursing funds due the penitentiary (§ 33–2–18), keeping a record book of infractions of prison rules and regulations (§ 33–2–32), assisting with the classification committee in determining meritorious deductions (§ 33–2–34), and instituting an inmate-release program (§§ 33–2–43 through 33–2–47). It is evident from these statutory provisions that the Warden's primary duties and responsibilities, like those of the Secretary of Corrections, are administrative in nature.

From looking at the statutes, we see that neither the Secretary of Corrections nor the Warden engage in any of the traditional duties of "law enforcement officers." They do not deal directly with the daily custodial

care of prison inmates. Moreover, because they do not have commissions, they have no power to make arrests or to take people into custody should a violation of the public order occur. They are merely administrative officers appointed by the governor to oversee, administer, and supervise the state's corrections system.

The duties and responsibilities of the Secretary of Corrections and the Warden are primarily determined by statute. The principal duties of these positions do not encompass the duties and responsibilities usually associated with "law enforcement officers." Traditionally, the duties of law enforcement officers include preserving the public peace, preventing and quelling public disturbances, enforcing state laws, including but not limited to the power to make arrests for violation of state laws. *See* §§ 29–1–1 through 29–1–2, N.M.S.A. 1978 (Repl.Pamp.1979 and Cum.Supp.1982). Furthermore, most law enforcement officers must receive commissions from the lawfully constituted authorities. *See* § 29–1–9, N.M.S.A. 1978 (Repl. Pamp.1979). In determining whether a person is involved in law enforcement work, this Court has adhered to the concept of traditional law enforcement activities. We do not deviate from this concept in the present case.

In *Methola v. County of Eddy,* 95 N.M. 329, 622 P.2d 234 (1980), this Court held that a county sheriff, his deputies, and jailers at the county jail were law enforcement officers within the meaning of the Tort Claims Act. In reaching that conclusion the Court first determined that their " 'principal duties under law are to hold in custody any person accused of a criminal offense, [or] to maintain public order.' " *Id.* at 332, 622 P.2d at 237 (quoting § 41–4–3(D), N.M.S.A. 1953 (Int.Supp.1976)); *see* § 41–4–3(D), N.M.S.A. 1978 (Repl.Pamp. 1982). A sheriff and his deputies are conservators of the peace within their county. §§ 4–41–2, –9, N.M.S.A.1978 (Repl.Pamp. 1980). Moreover, the majority of a sheriff's time is spent in direct contact with the public, making arrests, enforcing laws, and preserving the public order.

■ We previously have held that "[a] jailer is an officer in the public domain, charged with the duty to maintain public order." *State v. Rhea,* 94 N.M. 168, 169, 608 P.2d 144, 145 (1980). A jailor's principal duties also include holding accused persons in custody. *See* §§ 33–3–1 through 33–3–23, N.M.S.A. 1978 (Orig.Pamp. and Cum.Supp.1982). To determine whether positions are of a law enforcement nature, this Court will look at the character of the principal duties involved, those duties to which employees devote the majority of their time.

■ The fact that a person is employed at the penitentiary is not sufficient to establish that his job is one in law enforcement. *See State v. Linam,* 93 N.M. 307, 600 P.2d 253, *cert. denied,* 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). We find it significant that Section 33–1–10, N.M.S.A. 1978, specifically grants uniformed guards of the corrections division "the power of peace officers, as regards arrests and enforcement of laws, when upon the premises of a correctional facility under the control of the corrections division." Those persons working at the penitentiary whose duties are similar in nature to those of "law enforcement personnel" should be treated as law enforcement officers and given the powers that go along with their responsibilities. It is clear that the Legislature did not intend all persons working at the state's correctional facilities to be considered or treated as peace officers or law enforcement personnel, only those persons who possess these responsibilities as their primary duties. Had the Legislature intended that all employees of the corrections division be classed as peace officers, it could have so stated in the statute.

Other states have dealt with the issue of whether a corrections employee is a law enforcement officer. These states generally have dealt with this matter in two contexts: (1) whether a corrections officer employee was a law enforcement officer within the meaning of statutes relating to employee benefits, *Schalk v. Department of Administration,* 42 Cal.App.3d 624, 117 Cal.

Rptr. 92 (1974); *Kimball v. County of Santa Clara,* 24 Cal.App.3d 780, 101 Cal.Rptr. 353 (1972); and (2) whether a corrections officer employee was a law enforcement officer within the meaning of statutes proscribing assault and battery upon a law enforcement officer, *State v. Grant,* 102 N.J.Super. 164, 245 A.2d 528 (1968); *Lowe v. State,* 54 Ala.App. 280, 307 So.2d 86 (1974); *Bush v. State,* 367 So.2d 273 (Fla.Dist.Ct.App.1979). However, in determining whether the employee is a law enforcement officer, the courts consistently have looked at the nature of the duties of the employee.

This Court has looked at Section 41–4–3(D) and believes that it was the intent of the Legislature in enacting this provision to include within the definition of law enforcement officer or peace officer only those persons whose principal duties include those of a direct law enforcement nature. Both the Warden and the Secretary of Corrections devote the majority of their time to administrative duties. Furthermore, beyond that of any citizen they have no authority to make arrests for crimes, and their contact with the public is minimal.

This Court concludes that although a person may be employed by an agency involved with law enforcement work, this does not necessarily make him a law enforcement officer any more than an administrator of a hospital is necessarily a doctor. As this Court stated in *State v. Linam,* 93 N.M. at 308, 600 P.2d at 254, "There is no reason to equate the job of record supervisor with the term 'law enforcement personnel' * * * merely because the record supervisor is employed at the penitentiary." Similarly, in this case there is no reason to equate the positions of Secretary of Corrections or Warden with the position of "law enforcement officer," as that term is used in the Tort Claims Act. We therefore find that neither the Secretary of Corrections nor the Warden of the State Penitentiary in Santa Fe is a "law enforcement officer" within the meaning of Section 41–4–3(D).

IT IS SO ORDERED.

PAYNE, C.J., SOSA, Senior Justice, and FEDERICI and RIORDAN, JJ., concur.