916 P.2d 1313

Yael WEINSTEIN, Cynthia Weinstein, and Meir Weinstein, Plaintiffs–Appellants,

v.

CITY OF SANTA FE, ex rel., SANTA FE POLICE DEPARTMENT, an agency of the City of Santa Fe, Ray Sisneros, Dennis Miller, and certain John Doe Defendants, Numbers 2, 3, 4, 5 and 6, Employees of the Santa Fe Public Safety Department and the City of Santa Fe, New Mexico, Defendants–Appellees.

No. 22159.

Supreme Court of New Mexico.

April 1, 1996.

Rehearing Denied May 13, 1996.

Morrow & Barton, P.C., David P. Barton, Santa Fe, for Appellants.

Carpenter, Comeau, Maldegen, Brennan, Nixon & Templeman, Joseph E. Manges, Larry D. Maldegen, Santa Fe, for Appellees.

## OPINION

FROST, Justice.

Plaintiffs–Appellants Yael Weinstein, Cynthia Weinstein, and Meir Weinstein, appeal from the trial court's dismissal of their claim. The Weinstein's brought a tort action for damages against the Santa Fe Police Department and others under the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (Repl.Pamp.1989 & Cum.Supp.1995). The trial court dismissed the action for failure to state a claim for which relief could be granted. The Court of Appeals certified this case to us under NMSA 1978, § 34–5–14(C)(2) (Repl.Pamp.1990), as raising an issue of substantial public interest. We reverse and remand.

## I. FACTS

█ When reviewing a dismissal of a complaint for failure to state a claim upon which relief can be granted, see SCRA 1986, 1–012(B)(6) (Repl.Pamp.1992), we accept all well-pleaded facts as true and only examine whether the plaintiff might prevail under any state of facts provable under the claim. *California First Bank v. State*, 111 N.M. 64, 66, 801 P.2d 646, 648 (1990). The following facts are alleged in the complaint.

In December 1989, the officers of the Santa Fe Police Department arrested Andrew Sisneros on suspicion of rape. He was subsequently released. On February 3, 1990, the Santa Fe police arrested Andrew Sisneros for a second alleged rape and for kidnapping. Following the second arrest, the police failed to forward to the First Judicial District Attorney's Office the documentation necessary to arraign Andrew Sisneros on formal charges of rape and kidnapping. As a result of these failures by the police, Andrew Sisneros was released from detention on February 13, 1990. On May 7, 1990, Andrew Sisneros raped Yael Weinstein. Yael's parents, Cyn-

thia and Meir Weinstein, were speaking to her on the telephone when Andrew Sisneros initially assaulted her, and they heard their daughter being raped as the attack occurred. The police arrested Andrew Sisneros for the third time after the rape. Andrew Sisneros's bail was set at $250,000, which he was unable to pay. He was subsequently convicted for the rape of Yael Weinstein on May 7, 1990, and for the rape and kidnapping charges for which he had been previously arrested in February 1990.

In 1992, the Weinsteins brought suit against Defendants–Respondents City of Santa Fe, as represented by the Santa Fe Police Department, and Officers Ray Sisneros and Dennis Miller for injuries suffered by Yael Weinstein arising from the rape and by Cynthia and Meir Weinstein arising from witnessing the rape over the telephone. In the suit, the Weinsteins alleged that the Police Department and Officer Miller were responsible for forwarding the necessary paperwork to the District Attorney's Office for arraigning and prosecuting suspects, and that the Police Department and Officer Sisneros were responsible for formulating and implementing procedures to prevent the release of suspects due to mistakes, as occurred in this case. The Weinsteins charged that the Santa Fe Police Department, Officer Sisneros, and Officer Miller had a duty to ensure that the proper paperwork was forwarded to the District Attorney's Office, and that Defendants' failures breached that duty. The trial court dismissed the Weinsteins' complaint with prejudice. The court held that the police did not have a statutory duty to forward paperwork to the District Attorney's Office and concluded that, absent any statutory duty, the Tort Claims Act provided the police with immunity from the Weinsteins' suit.

In examining whether the Weinsteins' complaint states a cause of action against the police for failing to prevent injury caused by a third party, we must address two main issues: (1) can the officers be sued under the Tort Claims Act; and (2) do the officers owe a common-law or statutory duty to the Wein-

steins cognizable under the Tort Claims Act? We will consider these questions in turn.

## II. THE TORT CLAIMS ACT WAIVER OF IMMUNITY

▮ Generally, the Tort Claims Act provides governmental entities and public employees acting in their official capacities with immunity from tort suits unless the Act sets out a specific waiver of that immunity. *See* § 41–4–4; *Abalos v. Bernalillo County Dist. Attorney's Office*, 105 N.M. 554, 557, 734 P.2d 794, 797 (Ct.App.), *cert. quashed*, 106 N.M. 35, 738 P.2d 907 (1987). Section 41–4–12 of the Act sets out the applicable waiver of immunity for the acts or omissions of law enforcement officers. This section provides:

> The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

Section 41–4–12.

▮ Thus, in order to state a tort claim under the waiver of immunity set out in Section 41–4–12, a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law.

### A. Law Enforcement Officers

#### 1. Officers Miller and Sisneros

▮ The Officers first contend that they are not "law enforcement officers" for purposes of the Tort Claims Act. This argument is without merit. Section 41–4–3(D) of the Act defines a law enforcement officer as:

> any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

This Court noted in *Anchondo v. Corrections Department*, 100 N.M. 108, 110, 666 P.2d 1255, 1257 (1983), "To determine whether positions are of a law enforcement nature, this Court will look at the character of the principal duties involved, those duties to which employees devote the majority of their time."

NMSA 1978, Section 3–13–2(A)(4) (Repl. Pamp.1995), sets out the principal duties of municipal police officers. The statute provides in relevant part:

> The police officer of a municipality shall ... suppress all riots, disturbances and breaches of the peace; ... apprehend all disorderly persons; ... pursue and arrest any person fleeing from justice; and ... apprehend any person in the act of violating the laws of the state or the ordinances of the municipality and bring him before competent authority for examination and trial.

In the present case, it is undisputed that Officers Sisneros and Miller are municipal police officers subject to Section 3–13–2. Their principal duties under Section 3–13–2 entail making arrests for crimes and maintaining public order. Accordingly, there can be no question that they are law enforcement officers for purposes of the Tort Claims Act.

▮ The officers claim, however, that they were not acting as law enforcement officers at the time of the alleged negligent acts, and therefore they should not be considered law enforcement officers for purposes of the Weinsteins' suit. Essentially, they contend that because preparing paperwork is not one of their principal duties as police officers, they were not "law enforcement offi-

cers" at the time they allegedly were negligent in forwarding the paperwork and, thus, are immune from suit under the Tort Claims Act. The officers cite to *Abalos,* 105 N.M. at 560–61, 734 P.2d at 800–01 (discussing law enforcement officer requirement), and *Anchondo,* 100 N.M. at 110, 666 P.2d at 1257 (same), for support.[1] However, the officers confuse the statutory requirement that defendants must be "law enforcement officers" with the distinct issue of whether the defendants owe a specific duty to the plaintiffs. We address the question of duty in part II.B. below.

The statutory requirement that the defendants be law enforcement officers does not focus on the defendants' specific acts at the time of their alleged negligence. Instead it simply requires that the defendants' principal duties, those duties to which they devote a majority of their time, be of a law enforcement nature. *Anchondo,* 100 N.M. at 110, 666 P.2d at 1257. In *Anchondo,* the Court of Appeals examined whether a prison warden was a law enforcement officer for purposes of the Tort Claims Act. *Id.* The Court looked to the warden's principal duties as described by statute, not to his specifically alleged negligent acts, to determine if he was a law

enforcement officer. *Id.* The Court of Appeals addressed this same question in *Abalos,* 105 N.M. at 560–61, 734 P.2d at 800–01. Again, the Court looked only to the defendants' principal duties to determine if those duties brought the defendants within the statutory definition of a law enforcement officer. *Id.* Accordingly, the question whether a defendant is a law enforcement officer for purposes of the Tort Claims Act is determined by examining "the character of the principal duties involved, those duties to which employees devote a majority of their time." *Anchondo,* 100 N.M. at 110, 666 P.2d at 1257. In the present case, the officers' principal duties fall within the definition of "law enforcement officer" under the Tort Claims Act.[2]

We note that Section 41–4–12 does contain the limitation that the law enforcement officers must be "acting within the scope of their duties." However, this requirement simply means that an officer must be acting within the scope of employment in order to be sued in his or her capacity as a law enforcement officer. *See Narney v. Daniels,* 115 N.M. 41, 49, 846 P.2d 347, 355 (Ct.App.1992) (setting out four-part test to determine if officer's action is within scope of employment), *cert.*

---

1. The defendants also cite to a draft version of the *Abalos* opinion that contains an analysis of issues which did not appear in the final version of the opinion. The officers included the full text of the draft opinion in the record and specifically relied on the portions of the draft opinion that were omitted from the final version, both in their motion for dismissal and in their brief on appeal.

   The defendants' citation to and use of the Court of Appeals draft opinion is inappropriate. We recognize that the Court of Appeals has, on occasion, released draft versions of proposed opinions to the parties for comment or argument, and we acknowledge that these draft opinions may appear in the case files. However, draft opinions are relevant only to the specific case for which they were drafted and are only intended for use by the parties involved in that case under the limited circumstances for which they were released by the Court. We state emphatically that an unsigned, unfiled draft opinion has absolutely no precedential value or persuasive effect and may not be cited or relied upon in any case unconnected with the original proceeding for which it was drafted. *Cf.* SCRA 1986, 12–405(C) (Repl.Pamp.1992); *Coslett v. Third St. Grocery,* 117 N.M. 727, 736, 876 P.2d 656, 665

(Ct.App.) ("Unpublished opinions ... have no precedential value and should not be cited as authoritative in briefs to this Court."), *cert. denied,* 117 N.M. 802, 877 P.2d 1105 (1994). The defendants shall refrain from citing to or relying on this draft opinion in any further proceedings involving the Weinsteins' suit. In addition, we will disregard any of the defendants' contentions on appeal that rely solely on the holding of the draft opinion in the *Abalos* case. *Cf. State v. Woodward,* 121 N.M. 1, 11, 908 P.2d 231, 241 (1995) (we will not entertain unsupported arguments).

2. The officers also suggest that the statutory definition of "law enforcement officer" should not be read as including the officers' acts of failing to file paperwork, because to hold otherwise would potentially extend liability to police secretaries and couriers. However, the officers fail to consider that police secretaries and couriers would not be considered law enforcement officers under the Act because their principal duties do not include making arrests or keeping the peace. *See* § 41–4–3(D).

*denied,* 114 N.M. 720, 845 P.2d 814 (1993). However, there is no claim in this case that the officers were acting outside the scope of their employment.

### 2. The Santa Fe Police Department and the City of Santa Fe

■ In ruling on the officers' motion to dismiss, the trial court specifically held that the Santa Fe Police Department and the City of Santa Fe were not "law enforcement officers" for purposes of applying the waiver of tort immunity in Section 41-4-12. It is unclear whether the trial court relied on this finding as its basis for dismissing the Weinsteins' claim against the Police Department and the city, and this issue is not adequately addressed by the briefs. However, our ruling in *Silva v. State,* 106 N.M. 472, 477, 745 P.2d 380, 385 (1987), renders the trial court's finding with respect to the Police Department moot. In *Silva* we noted, "A governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived." *Id.* We held in *Silva* that the doctrine of respondeat superior extends liability to the public entities that have supervisory control over the tortious actors. *Id.* (noting that a public entity can only act through its employees); *see also California First Bank,* 111 N.M. at 69-70, 801 P.2d at 651-52 (applying the doctrine of respondeat superior to hold county vicariously liable for actions of sheriff's deputies under Tort Claims Act). Accordingly, absent a claim that the officers were acting outside the scope of their authority, the Police Department may be held vicariously liable for any alleged torts committed by the officers for which immunity has been waived.

■ As for the City of Santa Fe's liability, *Abalos, Silva,* and *California First Bank* set out the standard for determining whether a city or the state should be held liable under the doctrine of respondeat superior. *See Abalos,* 105 N.M. at 559, 734 P.2d at 799; *Silva,* 106 N.M. at 477, 745 P.2d at 385; *California First Bank,* 111 N.M. at 69-70,

801 P.2d at 651-52. In *Abalos,* the Court of Appeals set out two criteria for holding a political entity such as a city or the state liable for the negligent acts of an agency employee. First, the Court noted that for respondeat superior to apply, the city or state had to have direct supervisory responsibility or control over the negligent employee responsible for the harm. *Abalos,* 105 N.M. at 559, 734 P.2d at 799. Second, the *Abalos* Court established a remoteness standard for limiting a political entity's liability when a city or state agency is also a defendant. *Id.* The Court noted:

> Where there is no indication that the [city or] state did anything wrong or had any responsibility for the alleged harm suffered by plaintiffs, the [city or] state is properly dismissed.... To force the city or state to defend an action in which it has little direct involvement would be unduly burdensome and unnecessary. Only the particular agency involved should be named.

*Id.* (citations omitted) (holding that city, as operator of detention facility, could be sued for the alleged negligence of detention center employees).

In *Silva,* this Court elaborated on these two criteria, noting that the trial court should employ traditional concepts of respondeat superior for determining liability whenever a city or the state had the legal right to supervise or control the specific agency, regardless of whether it actually exercised that control. The court should then apply the remoteness doctrine to determine if a city or the state should be freed from liability, provided that dismissing the city or state under this doctrine would not create an inherently unfair or inequitable result. *Silva,* 106 N.M. at 477, 745 P.2d at 385 (remanding for determination of whether state should be held liable for actions of corrections department employees).

We further clarified the proper application of respondeat superior in *California First Bank,* holding that even when a political entity does not have the legal right to control

a specific agency, it may still be liable for that agency's actions if it enjoyed a degree of actual, de facto control over the agency. *California First Bank*, 111 N.M. at 69–70, 801 P.2d at 651–52 (reversing dismissal because complaint alleged that county exhibited de facto control over sheriff's policy regarding enforcement of liquor laws). Accordingly, in the present case the trial court should, on remand, consider whether the City of Santa Fe has supervisory authority over the Police Department and its officers and, if so, whether the city is nonetheless too remote an actor to be included as a defendant in this suit.

## B. What Duty is Owed Under the Tort Claims Act?

▇▇▇ The next question we must address is whether the officers owed a duty to the Weinsteins cognizable under the Tort Claims Act. In order for a law enforcement officer to be liable for the acts of a third party, the officer must have owed a duty to the victim. "Whether a duty exists is a question of law for the courts to decide." *Schear v. Board of County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984).

The officers contend that, in order to be liable under the Act's waiver of immunity, they must owe a *statutory duty* to the plaintiffs. They argue that they had no statutory duty to forward paperwork and therefore are immune from suit for any alleged negligence in failing to forward the proper paperwork. The Weinsteins counter that they need not demonstrate a statutory duty under the Act. They contend that violation of a *common-law duty* is sufficient to waive immunity for the officers under the Act. In the alternative, they claim that the officers do have a statutory duty to forward the necessary paperwork for prosecuting the rapist. We discuss each of these arguments below.[3]

The Tort Claims Act waives immunity for three types of claims: (1) the commission of an enumerated common-law tort; (2) the deprivation of a statutory right; and (3) the deprivation of a constitutional right. Section 41–4–12. In the present case, the Weinsteins do not allege a constitutional violation, so we limit our discussion to the first two categories.

### 1. Enumerated Common–Law Torts

▇▇▇ As noted above, the Tort Claims Act waives governmental immunity for claims of liability "resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when *caused by* law enforcement officers. . . ." Section 41–4–12 (emphasis added). In *Methola v. County of Eddy*, 95 N.M. 329, 333, 622 P.2d 234, 238 (1980), we held that Section 41–4–12 of the Tort Claims Act waived governmental immunity not only for intentional torts committed by law enforcement officers, but also for acts committed by third parties when caused by the negligence of the officers. We explained that the phrase "caused by," as employed in Section 41–4–12, is traditionally used in negligence actions, and we therefore concluded that when a suit is brought under the Tort Claims Act, the established law of negligence and damages should apply. *Id.* at 333–34, 622 P.2d at 238–39. Accordingly, a claim arising out of one of the common-law torts enumerated within the Section 41–4–12 waiver of immunity is essentially a common-law negligence claim, and the plaintiff need only show a violation of a common-law duty. *See Blea v. City of Espanola*, 117 N.M. 217, 220–21, 870 P.2d 755, 758–59 (Ct.App.) (noting law enforcement officers may be held liable for negligently inflicting one of the enumerated torts), *cert. denied*, 117 N.M. 328, 871 P.2d 984 (1994).

---

**3.** The officers also argue in their brief that they did not owe a duty to the Weinsteins because the Weinsteins were not foreseeable plaintiffs as a matter of law. *See generally Torres v. State*, 119 N.M. 609, 894 P.2d 386 (1995) (discussing foreseeable plaintiffs). However, the trial court did not rule on the issue of foreseeability in its dismissal of the Weinsteins' case, and we therefore do not reach this question on appeal.

In *Cross v. City of Clovis,* we set out the ordinary, common-law duty of law enforcement officers, noting "quite simply that a law enforcement officer has the duty in any activity actually undertaken to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done." *Cross v. City of Clovis,* 107 N.M. 251, 253, 755 P.2d 589, 591 (1988) (footnote omitted); *see also Torres v. State,* 119 N.M. 609, 614, 894 P.2d 386, 391 (1995) (reaffirming *Cross*). Of course, the exact nature of the duty owed may vary with the particular circumstances of the case. *See, e.g., Methola,* 95 N.M. at 333, 622 P.2d at 238 (noting that corrections officers' violation of common-law duty to protect persons in custody, which violation resulted in an enumerated tort, gave rise to claim cognizable under the Tort Claims Act); *Ortiz v. New Mexico State Police,* 112 N.M. 249, 252, 814 P.2d 117, 120 (Ct.App.1991) (holding that officers may be liable for common-law claim of negligent supervision that resulted in commission of an enumerated tort), *cert. quashed,* 113 N.M. 352, 826 P.2d 573 (1992).

In the present case, the complaint alleges that Yael Weinstein suffered a battery, which is one of the common-law torts enumerated in the Act. Accordingly, for Yael Weinstein to state a claim under the Act, she need only allege that the officers failed to exercise the care of reasonably prudent and qualified officers in an activity undertaken for the safety of others. Yael Weinstein's allegations that Officers Sisneros and Miller were negligent in failing to forward the paperwork necessary to prosecute the man who later raped her and in failing to develop a policy to prevent the release of such prisoners back into the community at large meet this requirement and are therefore sufficient to state a claim under the Tort Claims Act. Yael Weinstein's parents, however, do not claim to have suffered one of the enumerated common-law torts as a result of the officers' negligence. They claim that they suffered injuries as a result of witnessing their daughter's rape. Accordingly, the parents must rely on the second prong of Section 41–4–12, which waives immunity for claims of statutory violations.

### 2. Statutory Violations

██ The parents' claim raises somewhat different issues with respect to waiver of immunity under Section 41–4–12. The parents were not injured by the battery itself, but instead by witnessing the battery via the telephone. Thus, their claim is akin to a bystander claim of negligent infliction of emotional distress.

Section 41–4–12 does not, however, provide for a separate cause of action for the tort of negligent infliction of emotional distress in the list of enumerated common-law torts for which immunity is waived. Therefore, a plaintiff may not maintain a separate bystander claim for negligent infliction of emotional distress under Section 41–4–12. As we noted in *Bober v. New Mexico State Fair:*

> This Court has held that a law enforcement officer or agency may be held liable under Section 41–4–12 for negligently causing infliction of one of the predicate torts. But no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section.

*Bober v. New Mexico State Fair,* 111 N.M. 644, 653–54, 808 P.2d 614, 623–24 (1991) (citations omitted); *see also Blea,* 117 N.M. at 219–20, 870 P.2d at 757–58 (applying *Bober*); *cf. Lucero v. Salazar,* 117 N.M. 803, 806, 877 P.2d 1106, 1109 (Ct.App.) (construing Tort Claims Act as "evincing a legislative intent not to waive immunity for injuries to indirect or incidental victims of tortious acts committed by government employees"), *cert. denied,* 117 N.M. 802, 877 P.2d 1105 (1994).

On the other hand, although the parents cannot bring a claim for bystander recovery based on negligent infliction of emotional distress, they may bring a direct claim for personal injury, including emotional distress, arising from a violation of a statutory right.

*See* § 41–4–12 (waiving immunity for "deprivation of any rights, privileges or immunities secured by the ... [laws of] New Mexico...."); *cf. Romero v. Otero*, 678 F.Supp. 1535, 1540 (D.N.M.1987) (holding that claim of damages for intentional infliction of emotional distress, although not an enumerated tort under Section 41–4–12, may be recoverable as personal injury damages arising from a violation of a statutory right).

In *California First Bank*, 111 N.M. at 71–73, 801 P.2d at 653–55, we concluded that the waiver of immunity in Section 41–4–12 for injuries resulting from the "deprivation of any rights ... secured by the constitution and laws of the United States or New Mexico ..." included violations of statutorily created rights. We specifically held that NMSA 1978, Section 29–1–1 (Repl.Pamp.1994), which sets out specific duties of police officers, creates a private right, and we concluded that a violation of this private right could serve as the foundation for a claim under Section 41–4–12. *California First Bank*, 111 N.M. at 74–75, 801 P.2d at 656–57. Accordingly, the Weinsteins may raise a claim for personal injuries resulting from a law enforcement officer's negligent failure to perform a statutory duty. The nature of the duty owed by the officer to the plaintiff in such a claim is necessarily determined by the scope of the officer's obligations under the statute.

▪ In the present case, Yael Weinstein's parents rely on the deprivation of several statutory rights as the bases for their claim under Section 41–4–12. The Weinsteins cite to four statutes which govern the duties of municipal law enforcement officers, such as Officers Sisneros and Miller, and which the Weinsteins allege the officers violated. These four statutes are set out in relevant part below.

The Weinsteins first cite to Section 3–13–2, which denotes the duties of municipal police officers. Section 3–13–2(A) provides in relevant part, "The police officer of a municipality shall ... apprehend any person in the act of violating the laws of the state or the ordinances of the municipality and bring him before competent authority for examination and trial."

The second statute on which the Weinsteins rely is NMSA 1978, Section 4–37–4(A) (Repl.Pamp.1992), which discusses the duties of county sheriffs. *See* § 3–13–2(B) ("In the discharge of his proper duties, a [municipal] police officer shall ... be subject to the same responsibilities as sheriffs in similar cases."). Section 4–37–4(A) provides in part, "It is the duty of every county sheriff ... [to] diligently file a complaint or information alleging a violation if circumstances would indicate that action to a reasonably prudent person; and ... cooperate with the district attorney or other prosecutor in all reasonable ways."

The third statute they cite is NMSA 1978, Section 4–41–2 (Repl.Pamp.1992), which provides, "The sheriff shall ... cause all offenders to keep the peace and to appear at the next term of the court and answer such charges as may be preferred [sic] against them."

Finally, the Weinsteins point to Section 29–1–1, which sets out the general duties of all law enforcement officers:

It is hereby declared to be the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware, and it is also declared the duty of every such officer to diligently file a complaint or ·information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken, and it is also declared his duty to cooperate with and assist the attorney general, district attorney or other prosecutor, if any, in all reasonable ways.

*Id.* The Weinsteins allege that the officers violated these statutory duties by negligently failing to prepare and forward the paperwork necessary to charge and prosecute the rapist and by failing to implement policies to prevent the rapist's release.

We note that all four of these sections secure private rights which may be enforced under the Tort Claims Act. *California First Bank* set out a two-part test to determine when a statute creates a right cognizable under the Act: (1) whether the legislation creates a right on the part of specific individuals; and (2) whether the legislative remedy explicitly or implicitly forecloses enforcement by private individuals through resort to the Tort Claims Act. *California First Bank,* 111 N.M. at 74, 801 P.2d at 656. After analyzing Section 29–1–1, we concluded in *California First Bank* that it did confer an individual right and that the legislature did not intend to preclude tort liability under the Tort Claims Act for a violation of this right. *Id.* at 74–75, 801 P.2d at 656–57; *see also Schear,* 101 N.M. at 676, 687 P.2d at 733 (noting that Section 29–1–1 creates a duty to private individuals).

Turning to the statutes at issue in the present case, we note that Sections 3–13–2, 4–37–4, and 4–41–2 confer rights very similar to those conferred by Section 29–1–1. All four statutes generally direct officers to take steps necessary to prosecute suspected criminals, such as filing complaints against the suspects, bringing them before the courts, and assisting the prosecution. The ultimate goal of all these statutes is to further public safety by bringing suspected criminals who are already in police custody to justice.

As for the second prong of the *California First Bank* test, only Section 4–37–4 contains an alternative remedy for a violation. *See* § 4–37–4(B) (violations punishable by fine and removal from office). This remedy, however, is identical to the remedy contained in Section 29–1–1, which we held did not preclude enforcement under the Tort Claims Act. *California First Bank,* 111 N.M. at 74, 801 P.2d at 656. Accordingly we conclude that, like Section 29–1–1, Sections 3–13–2, 4–37–4, and 4–41–2 each confer private rights cognizable under the Tort Claims Act.

The officers counter that although the statutes may impose a duty to cooperate with prosecutors and bring defendants to trial, this duty does not extend to benefit the Weinsteins. The officers suggest that specific duties to cooperate with other governmental entities are only for the benefit of those governmental entities and do not create a private right for individual citizens. Thus they argue that only the District Attorney's Office could bring a suit for an officer's failure to cooperate with and assist a prosecutor, as required by Sections 29–1–1 and 4–37–4(A). For support, the officers rely on *Wittkowski v. State Corrections Department,* in which the Court of Appeals held that a related statute, NMSA 1978, Section 29–3–3 (Repl.Pamp.1994), which requires that local police cooperate with police in other jurisdictions and participate in national criminal identification and investigation programs and information exchanges, only created a duty owed to the police in other jurisdictions and not to private citizens. *Wittkowski v. State Corrections Dep't,* 103 N.M. 526, 531, 710 P.2d 93, 98 (Ct.App.), *cert. quashed,* 103 N.M. 446, 708 P.2d 1047 (1985).

We disagree. In *Schear,* we explained that the duty to investigate violations of criminal laws, imposed by Section 29–1–1, is designed to protect individual citizens from harm. *Schear,* 101 N.M. at 676, 687 P.2d at 733. We therefore rejected the defendant's claim that this duty did not run to specific individuals. *Id.* We concluded that preventing individuals from raising claims based on violations of duties that are for their benefit was an unwarranted reexpansion of sovereign immunity beyond the statutory bounds of the Tort Claims Act. *Id.; see also California First Bank,* 111 N.M. at 71 n. 3, 801 P.2d at 653 n. 3 (reaffirming holding in *Schear*). Conversely, the Court in *Wittkowski* concluded that the statute creating a duty for officers to cooperate in national criminal identification and investigation programs and information exchanges was not intended to create a private right. *Wittkowski,* 103 N.M. at 531, 710 P.2d at 98. However, the *Wittkowski* Court's questionable analysis is inapplicable here because, as we concluded above, the statutes in this case were intended to create private rights and to protect individual citizens.

The statutory obligations that officers cooperate with prosecutors and bring defendants before the courts, although somewhat helpful to prosecutors and the judiciary in fulfilling their functions, are primarily designed to protect the public by ensuring that dangerous criminals are removed from society and brought to justice. Accordingly, we conclude that, as with the duty to investigate crimes under Section 29-1-1, the duties of cooperating with prosecutors, diligently filing complaints, and bringing defendants before the courts inure to the benefit of private individuals such as the Weinsteins, and the violation of these statutory duties may give rise to a cognizable claim under the Tort Claims Act.

The officers next argue that these four statutes do not create an express duty to prepare and forward paperwork. The officers focus on the fact that none of these statutes explicitly mentions any duty on the part of an officer to prepare and forward any paperwork. In essence, the officers contend that absent an express statutory directive mandating the performance of a specific act, there is no statutory obligation to perform that act. We decline to adopt this constrained view of an officer's statutory obligations.

These four statutes have similar provisions requiring police officers to diligently file a complaint or information against accused criminals, to bring them before competent authority for examination and trial, and to cooperate with the prosecutors in all reasonable ways. By mandating that police officers perform these specific duties, the statutes implicitly require that police officers take the steps necessary to accomplish these duties. If the filing of specific paperwork by the police is necessary to bring an accused criminal before the court for trial or to assist the prosecutor in pursuing the prosecution, then an officer's negligent failure to forward that paperwork is a violation of his or her duties under the statutes.

In the present case, the Weinsteins alleged that Officer Miller negligently failed to forward certain paperwork and that this paperwork was necessary to bring the rapist before the court for trial and to assist the district attorney. Accordingly, taking these well-pleaded facts as true, we hold that the Weinsteins have raised a cognizable claim that Officer Miller negligently deprived Yael Weinstein's parents of a statutory right.

In addition, the Court of Appeals noted in *Abalos* that a supervisor's negligent failure to "formulate and implement procedures" to prevent the breach of a statutory duty may also serve as the basis for a claim under the Tort Claims Act for breach of that statutory duty. *Abalos*, 105 N.M. at 560, 734 P.2d at 800 (noting that the plaintiff's complaint alleged that one of the defendants "had a duty to formulate and implement procedures" to prevent violation of statutory duty, which "allegations, if proven, [were] sufficient to establish breach of a duty" under the Act by that defendant). Thus, the Weinsteins' allegations that Officer Sisneros failed to implement policies to prevent the release of the rapist in this case are also sufficient to raise a cognizable claim under Section 41-4-12 for which immunity has been waived.

### III. CONCLUSION

We hold that the officers owed Yael Weinstein a common-law duty to exercise the level of care of a reasonably prudent and qualified officer for any activity undertaken for the safety of others foreseeably at risk and that the officers owed all the Weinsteins a statutory duty to prepare and forward paperwork necessary to file a criminal complaint, bring a criminal defendant before the courts, and assist prosecutors in bringing an indictment. Accordingly, we reverse the trial court's dismissal of the Weinstein's claims and remand this case to the trial court for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

BACA, C.J., and RANSOM and MINZNER, JJ., concur.

FRANCHINI, J., not participating.